thorize this court to conclude that the defendants were not prejudiced by the denial of their right to open and close to the jury, the judgment and orders must be reversed, and a new trial ordered, with costs to appellants to abide the event. All concur.

(90 Misc. Rep. 178)

### NEW YORK, W. & B. R. CO. v. CITY OF NEW YORK.

(Supreme Court, Special Term, New York County.    April, 1915.)

1. RAILROADS ☞94—CROSSING STREETS—BRIDGES—NUISANCE—INJUNCTION.
   Where, in an action to enjoin a city from removing, as a nuisance, a bridge erected by plaintiff, a railroad company, on a road which was graded and curbed and had a roadway 60 feet wide, with sidewalks on each side 20 feet wide, the evidence showed that the bridge·crossed the road at a sharp angle, that the base of its columns were between 18 and 19 feet apart, and so placed as to create three lanes of travel, each from 18 to 19 feet wide, and that in consequence a dangerous situation for traffic might arise at any time, defendant was entitled to a judgment dismissing the complaint on the merits.

   [Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 266–273; Dec. Dig. ☞94.]

2. RAILROADS ☞95—CONSTRUCTION OF RAILROAD BRIDGE—RESTORATION OF STREET.
   An ordinance, granting a railroad company the right to cross a street, required that all crossings and viaducts over streets should be so constructed as not to interfere with the ordinary use of the street, that the railway should be constructed in the most modern and approved manner of railroad construction, that all streets in any way disturbed by such construction should be restored to their original position, and that in case of failure of plaintiff to restore the streets within a reasonable time, the city might cause the work to be done and collect the reasonable cost from a fund deposited by the railroad company as security for the·performance of the conditions of the ordinance. The ordinance further provided that any railway structure crossing the street and having a length of 75 feet or less should be constructed in a single span, and that if more than 75 feet, intermediate columns to support the structure might be placed in the street in a manner to be approved. Held, that under Railroad Law (Laws 1890, c. 565) § 11, the terms of which were substantially incorporated in such ordinance, the company, after constructing a bridge across the street, owed a duty, which was continuing and incident to its franchise, to restore the street to its former state, or such a state as not necessarily to impair its usefulness.

   [Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 274–283; Dec. Dig. ☞95.]

3. RAILROADS ☞97—CROSSING STREETS—ORDINANCE GIVING RIGHT TO CROSS.
   Such ordinance further provided that the determination of the sufficiency of the plans of the bridge should be committed to the board of estimate and apportionment. Held, that the railroad company's duties and obligations were measured by ordinance, it being a written agreement between the parties, that the power vested in the board was merely to see that the ordinance was complied with, and that the board had no authority to alter, modify, or dispense with any of its provisions, or to authorize the building of a structure in violation of it.

   [Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 297–304; Dec. Dig. ☞97.]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Action by the New York, Westchester & Boston Railroad Company against the City of New York. Judgment for defendant..

Graham & L'Amoreaux, of New York City (Ralph P. Buell, of New York City, of counsel), for plaintiff.

Frank L. Polk, Corp. Counsel, of New York City, for defendant.

GREENBAUM, J. [1, 2] This action is brought for an injunction restraining the defendant from removing as a nuisance the bridge or structure erected by the plaintiff crossing Boston road at its intersection with Schieffelin's lane. On July 26, 1904, an ordinance was adopted by the board of aldermen granting to the plaintiff the right to cross various streets and highways in the city of New York, including Boston road at the intersection in question. On August 2, 1904, this ordinance was approved by the mayor and accepted by plaintiff by written agreement filed with the comptroller on August 11, 1904, under which it covenanted and agreed to "conform to, abide by and perform all terms, conditions and requirements in said ordinance fixed and contained." The ordinance provided that the plans for all structures must first be submitted to and approved by the board of estimate and apportionment. On December 31, 1905, the board of estimate and apportionment unanimously approved the plans submitted to it by the plaintiff. Thereafter plaintiff commenced the erection of the bridge and completed the construction thereof in accordance with such plans on August 31, 1907, at the approximate cost of $65,000. On October 31, 1912, and on October 9, 1913, the board of estimate and apportionment adopted resolutions declaring the columns and structure in question an obstruction to public travel and a nuisance, and directed its abatement by the plaintiff, and in the event of its failure to do so authorized such removal by the president of the borough of the Bronx. On December 12, 1913, Cyrus C. Miller, the borough president, notified the plaintiff that unless steps were taken by December 20, 1913, to abate the nuisance by removing the structure and columns he would proceed to do so. Thereafter this action was brought.

Boston road is a graded and curbed highway, 100 feet wide. The roadway is 60 feet and the sidewalks on either side 20 feet in width. A portion of the roadway 16 feet in width has been paved with asphalt, except that as the road approaches the bridge this asphalt broadens out to 30 feet and continues under it at that width. The ordinance granting plaintiff the right to cross Boston road required that all roadway crossings and viaducts over streets shall be so constructed as not to interfere with the ordinary use of the street as a public highway; that the railway shall be constructed in the most modern and approved manner of railway construction; that all streets in any way disturbed by such construction shall be restored to their original condition; and that in case of the failure of the grantee to restore the street within a reasonable time the city of New York may, under resolution of the board of estimate and apportionment, cause the work to be done and collect the reasonable cost from the fund deposited by the plaintiff with the city as security for the performance by it of the terms and conditions of the ordinance. It also provides that any

superstructure of the railway crossing the street, and having a length of 75 feet or less shall be constructed in a single span, and if more than 75 feet, intermediate columns to support the structure may be placed in the street in such manner as may be approved. The plaintiff's duty under section 11 of the Railroad Law, the terms of which were substantially incorporated in the ordinance under which the structure was built, was to restore Boston road to its former state or such a state as not unnecessarily to have impaired its usefulness, and this duty was a continuing one incident to its franchise. Hatch v. Syracuse, B. & N. Y. R. R. Co., 50 Hun, 64, 4 N. Y. Supp. 509; Allen v. Buffalo, R. & P. R. R. Co., 151 N. Y. 434, 45 N. E. 845.

The evidence establishes that the structure erected by the plaintiff not only failed to comply with the terms and conditions of the ordinance under which it was built, but constitutes an unreasonable obstruction of and interference with the ordinary use of Boston road. The bridge crosses Boston road at a sharp angle. The bases of the bridge columns are from 18½ to 19 feet apart, and as placed in the roadway create three bays or lanes of travel, each from 18½ to 19 feet wide, which in itself is a source of danger to traffic. In passing through these bays traffic is forced, by reason of the positions of the columns, out of alignment with the normal and natural line of travel along the highway, and after passing beyond the bridge vehicles are compelled to make a sharp turn or deflection to resume a normal course. This is likely, in the case of an automobile traveling at an ordinary rate of speed, to cause a lurch or swing of sufficient force to throw a passenger toward the side of the car, and on a wet day to cause the car to skid off the paved portion of the roadway. A vehicle passing under the bridge towards the city of New York would, if it continued in the line of the bay or lane, run into the sidewalk of Boston road. It is also possible for traffic going in opposite directions to meet in the middle bay or lane. One of the experts called by the city described the conditions as they appeared to him while traveling towards the bridge in an automobile as follows:

"While traveling along this road in an automobile, when you first catch sight of the bridge, you see a cluster of columns irregularly placed, with apparently no definite path between any of them. Then, as you keep approaching these columns, they seem to rotate or travel around, and * * * at one point one path seems to be open to automobiles, and as you approach the bridge nearer another set of paths comes into view and makes you believe you are going to pass through those, and finally when you are near the bridge, the final bay as outlined or as indicated by the pavement appears to be the bay through which the automobile naturally passes."

It was proven upon the trial that the plan of the bridge was designed to carry the railway across Boston road at the least possible expense to the plaintiff, and that the columns were placed in the roadway without adaptation or reference to the normal lines of traffic on Boston road. The expert engineers called by the city testified that the columns as located by the plaintiff constituted an unnecessary and unreasonable interference with the use of the highway, and pointed out that this could readily have been avoided, either by eliminating all sup-

porting columns from the roadway or by substituting a single line of columns in the center of the street. The experts called by the plaintiff, while denying that the columns unreasonably interfere with the traffic along Boston road, admitted that either type of bridge testified to by the city's experts would have interfered less with the use of Boston road as a highway. It appears that Boston road is the only diagonal highway leading from Bronx park into the state of Connecticut, and that the city is at the present time constructing a bridge over Hutchinson river at its crossing with Boston road, about a mile east of the point of intersection in question, and that when this bridge is completed Boston road will be the most desirable, continuous, and shortest route to and from the city, being more direct than any other route to the extent of a mile or more. The evidence introduced by plaintiff of the average number of vehicles using the highway over a given period of time, and theoretical estimates based thereon of the average distance separating such vehicles, is of no value in determining whether or not the columns constitute a menace and danger to traffic. Testimony of this character entirely overlooks the constant change and fluctuation in traffic conditions and the resulting congestion and concentration of vehicles using the roadway. A dangerous situation may arise at any minute or hour of the day. In determining whether the plaintiff's bridge constitutes an unreasonable interference with the use of the highway it is proper to consider not merely the conditions created by the normal and customary amount of traffic, but also the dangers and perils that may arise from the presence of dense, unusual, and extraordinary traffic upon that road. I am therefore of opinion, in the light of all the foregoing considerations, that the plaintiff's structure and columns unreasonably and unnecessarily interfere with the use of Boston road and constitute a nuisance in law.

[3] But it is suggested by the plaintiff that under the terms of the ordinance the determination of the sufficiency of the plans of the structure was committed to the board of estimate and apportionment, that such board unanimously approved the plans submitted to it, and that, it being conceded that the bridge was erected in accordance therewith, its duty under the ordinance was completely fulfilled. This argument is untenable. The duties and obligations of the plaintiff were measured and defined by the terms and conditions of the ordinance which it expressly contracted by agreement in writing to fulfill. The power vested in the board of estimate and apportionment under the ordinance was merely to see that its terms and conditions were complied with. It had no authority to alter, modify, or dispense with any of its provisions or to authorize a structure to be built in violation thereof. The plaintiff was bound to determine at its peril the character and type of structure required by the ordinance, and which would leave Boston road free from unreasonable interference, and any error of the board of estimate and apportionment in approving plans in violation of the provisions of the ordinance obviously did not operate to discharge the plaintiff from its obligations thereunder.

In view of the above conclusion it is unnecessary to determine the serious question as to the effect of the plaintiff's failure to secure

from the Public Service Commission a determination as to the manner in which the crossing at Boston road should be made.

Judgment for defendant dismissing the complaint upon its merits. Judgment for defendant.